**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Product Fabricators, Inc. and
Michael P. Murphy,

                          Plaintiffs,

                                                                Civil No. 06-537 (RHK/RLE)
v.                                                  **MEMORANDUM OPINION**
                                                                **AND ORDER**

CIT Communications Finance
Corporation,

                          Defendant.

---

Shawn L. Pearson and Steven H. Silton, Mansfield Tanick & Cohen, PA, Minneapolis, Minnesota, for Plaintiffs.

Thomas P. Kane and Mark T. Berhow, Hinshaw & Culbertson, LLP, Minneapolis, Minnesota, for Defendant.

---

### Introduction

Plaintiffs Product Fabricators, Inc. ("Product Fabricators"), a Minnesota corporation, and Michael P. Murphy, a Minnesota resident (collectively "Plaintiffs"), have sued Defendant CIT Communications Finance Corporation ("CIT") for the alleged breach of a settlement agreement. CIT, a New Jersey corporation, has moved to transfer venue under 28 U.S.C. § 1404(a), to the United States District Court for the District of New Jersey. For the reasons set forth below, the Court will grant the Motion.

**Background**

The parties to this action have been on opposing sides of litigation in the past. The instant dispute arises from the settlement of two prior lawsuits, and the subsequent conduct of the settling parties.

In late 2002, CIT sued Plaintiffs in the United States District Court for the District of New Jersey (the "New Jersey Federal Action"). The New Jersey Federal Action arose out of a lease agreement and guaranty executed by the parties. In May 2003, Product Fabricators sued CIT and others in the Minnesota District Court in Pine County, Minnesota (the "Minnesota State Action").

On February 23, 2004, the parties entered into a settlement agreement by which the New Jersey Federal Action was settled in its entirety, as were the claims involving CIT in the Minnesota State Action (the "New Jersey Settlement Agreement"). (See Settlement Agreement ¶¶ 7-9.) The New Jersey Settlement Agreement provides in part:

> [T]his Agreement, and any dispute arising herefrom shall be governed by the internal laws of the State of New Jersey. The Parties consent to the jurisdiction of any state or federal court within the State of New Jersey over any dispute arising herefrom.

(Id. ¶ 13 ("Paragraph Thirteen").) Pursuant to the New Jersey Settlement Agreement, Plaintiffs agreed to pay CIT $100,000 (the "Settlement Amount"), in 40 monthly installments of $2,500. (Id. ¶ 1.) It further provides:

> Product Fabricators and Murphy . . . hereby assign and pledge to CIT (up to the outstanding balance of the Settlement Amount) any recovery by way of

settlement or judgment they receive in connection with the Minnesota Action.

(Id. ¶ 5(a).)

In conjunction with the execution of the New Jersey Settlement Agreement, Plaintiffs also executed a Judgment by Confession. (Kane Aff. Ex. B.) It provides that if Plaintiffs "fail to make any payment when due, CIT is entitled to obtain a judgment against [them] . . . in the amount of $119,421.48, plus attorneys' fees and costs of suit, less any monies paid pursuant to the Settlement Agreement." (Id. ¶¶ 7-8.) CIT was required to hold the Judgment by Confession in escrow as security for Plaintiffs' performance of their obligations under the New Jersey Settlement Agreement.

Following the February 2004 execution of the New Jersey Settlement Agreement, the New Jersey Federal Action was dismissed (see Kane Aff. Ex. C) and, in May 2004, CIT was dismissed from the Minnesota State Action (see id. Ex. F). In October 2004, Product Fabricators settled the Minnesota State Action with the other defendants resulting in a $100,000 payment to Product Fabricators (the "Minnesota Settlement Agreement"). (See id. Ex. G at 2.)

After the settlement of the Minnesota State Action, Plaintiffs ceased their $2,500 monthly payments to CIT, and refused to apply the $100,000 they received in the settlement of the Minnesota State Action to the outstanding Settlement Amount owed to CIT. (See id. Exs. D, F.) On October 11, 2005, CIT obtained an Order Restoring Complaint and Entering Final Judgment in the amount of $120,150.75, from the United

States District Court for the District of New Jersey (the "New Jersey Court"). (Id. Ex. J.) And on December 29, 2005, CIT docketed that Final Judgment in the Minnesota District Court for the 10th Judicial District in Pine County, Minnesota (the "Minnesota State Court"). (Id. Ex. K.)

On January 26, 2006, Plaintiffs sued CIT in the Minnesota State Court. Plaintiffs allege that the New Jersey Settlement Agreement constitutes a contract and CIT "breached this contract . . . by seeking, and securing, a reopening of the New Jersey [Federal] Action, despite the suit's dismissal with prejudice and CIT's consent to such dismissal with prejudice." (Compl. ¶ 30.) They also allege a promissory estoppel claim (id. ¶¶ 32-39), violation of the Uniform Enforcement of Foreign Judgments Act, Minn. Stat. § 548.28 ("UEFJA") (id. ¶¶ 40-46), and seek a declaratory judgment "adjudging and declaring the rights of the parties" under the New Jersey Settlement Agreement (id. ¶¶ 47-51). CIT removed the action to this Court based on diversity jurisdiction. (See Doc. Nos. 1, 2.) The instant Motion to transfer venue to New Jersey followed.

**Analysis**

Section 1404(a) of Title 28, United States Code, states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Section 1404(a) lays out three general categories of factors: (1) the interest of justice, (2) the convenience of the witnesses, and (3) the convenience of the parties. Terra Int'l, Inc. v. Mississippi Chem. Corp., 119 F.3d 688, 691 (8th Cir. 1997) (internal citations

omitted). The evaluation of a transfer motion, however, is not limited to these factors. Id. Rather, such determinations require a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors. Id. "The idea behind § 1404(a) is that where a 'civil action' to vindicate a wrong—however brought in a court—presents issues and requires witnesses that make one District Court more convenient than another, the trial judge can, after findings, transfer the whole action to the more convenient court." Cont'l Grain Co. v. The FBL-585, 364 U.S. 19, 26 (1960). The burden is on the moving party to show why a change of forum is warranted. Stinnett v. Third Nat'l Bank of Hampden County, 443 F. Supp. 1014, 1017 (D. Minn. 1978). The Court finds that CIT has met that burden.

A.   **Interest of Justice**

Courts weigh the interest of justice factor very heavily, Radisson Hotels Int'l, Inc. v. Westin Hotel Co., 931 F. Supp. 638, 641 (D. Minn. 1996), and it "may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result." Coffey v. Van Dorn Iron Works, 796 F.2d 217, 220-21 (7th Cir. 1986) (citations omitted). Among the relevant considerations in analyzing this factor are (1) judicial economy, (2) the plaintiffs' choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine local law. Terra, 119 F.3d at 696. The presence of a forum selection clause is also relevant in this analysis. See Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22,

29-30 (1988) (noting that the district court will be called on to address such issues as "the fairness of transfer in light of the forum-selection clause and the parties' relative bargaining power" under § 1404(a)).

CIT relies on Paragraph Thirteen to argue that "plaintiffs clearly contemplated the possibility of litigation in New Jersey by consenting to jurisdiction there and agreeing that New Jersey law would govern." (Mem. in Supp. at 10.)  CIT further argues that Plaintiffs would have a greater ability to enforce a judgment in New Jersey, and that having a New Jersey court determine New Jersey law (pursuant to the choice of law provision in Paragraph Thirteen) is preferable. (Id. at 10-11.)  According to CIT, the presence of Paragraph Thirteen should figure centrally in the Court's analysis.

Plaintiffs respond that Paragraph Thirteen is inapplicable here because "the Minnesota Settlement Agreement is the controlling agreement" and their "claims against CIT relate to the Minnesota Settlement Agreement, not the New Jersey Settlement Agreement." (Mem. in Opp'n at 12.)  Plaintiffs argue that "the Minnesota Settlement Agreement controls because it supersedes the New Jersey Settlement Agreement, and hence, Minnesota law applies." (Id. at 13.)

Plaintiffs' Complaint belies these assertions; Plaintiffs simply did not frame this case as one involving the Minnesota Settlement Agreement.  In fact, the Complaint does not even reference the Minnesota Settlement Agreement.  It does, however, reference and attach the New Jersey Settlement Agreement and allege that the New Jersey Settlement Agreement was breached when CIT reopened the New Jersey Federal Action. (See Compl.

6

¶¶ 22-31.) Plaintiffs' arguments to the contrary—that their claims "against CIT relate to the Minnesota Settlement Agreement, not the New Jersey Settlement Agreement" (Mem. in Opp'n at 12)—are specious at best. Accordingly, the Court rejects Plaintiffs' arguments and it determines that Paragraph Thirteen is applicable to the instant action.

Having determined that Paragraph Thirteen is applicable and relevant here, see Terra, 119 F.3d at 695, the Court must consider the appropriate weight it should be given in the instant analysis. Courts distinguish between mandatory and permissive forum selection clauses, see Dunne v. Libbra, 330 F.3d 1062, 1063 (8th Cir. 2003) (finding clause with similar wording to be permissive), and generally give permissive forum selection clauses less weight when considering a motion to transfer, See Best Buy Co. v. Onkyo U.S.A. Corp., 1991 WL 156571, at *2 (D. Minn. Aug. 1, 1991) (citing cases). Here, there is no dispute that Paragraph Thirteen is a permissive forum selection clause.

Nonetheless, Paragraph Thirteen is relevant to the Court's consideration of the fairness of a transfer to the District of New Jersey. Clearly, Plaintiffs contemplated litigation in New Jersey, as they consented to personal jurisdiction there. Furthermore, the parties provided for the application of New Jersey law to the New Jersey Settlement Agreement—a factor which itself counsels in favor of transfer. See 17 Moore's Federal Practice 111.13[1][m] (in general, courts favor adjudication of diversity actions by the court that sits in the state whose substantive law governs the case). Thus, while Paragraph Thirteen may not figure as "centrally in the [Court's] calculus" as a mandatory forum

selection clause would, see Terra, 119 F.3d at 691, it does add strength to CIT's position regarding transfer of this action.

CIT also argues that the "crux of plaintiffs' Complaint alleges that CIT breached the . . . Settlement Agreement by seeking judgment against plaintiffs" in the New Jersey Court, and that the New Jersey Court "has a unique interest in determining the validity of the Order Restoring Complaint and Entering Final Judgment" it issued. (Mem. in Supp. at 11-12.) Plaintiffs respond that they "chose to venue the case in Pine County because CIT's initiation of the Collection Proceedings constitutes a breach of the Minnesota Settlement Agreement, and since that is where the breach occurred, it was the most logical venue." (Mem. in Opp'n at 10.) They argue that their choice of forum is entitled to deference from the Court, especially since Product Fabricators is headquartered in Minnesota, and Murphy is a Minnesota resident.

Plaintiffs correctly assert that their choice of forum should be given more weight as the chosen forum is their residence. See 15 Wright, Miller & Cooper, Federal Practice and Procedure § 3849 (1986). Plaintiffs' choice of forum, however, is given substantially less weight if "operative events" giving rise to the lawsuit took place in a forum other than that chosen by the plaintiff. 17 Moore's Federal Practice § 111.13[1][c]. Indeed, "a motion to transfer to the district in which the events occurred is likely to succeed." Id. § 111.13[1][d].

There can be no serious contention that the operative events giving rise to this litigation occurred anywhere other than in New Jersey, and Plaintiffs' attempts to change

8

their allegations to avoid a transfer to the District of New Jersey are to no avail.  Again, the Court need only look to Plaintiffs' Complaint to see that it states that the breach of <u>the New Jersey Settlement Agreement</u> occurred when CIT secured "a reopening <u>of the New Jersey Action</u>."  (Compl. ¶ 30 (emphasis added).)  This is the event underlying the promissory estoppel and declaratory judgment claims as well.  While Plaintiffs' claim under the UEFJA touches upon CIT's docketing of the New Jersey judgment in the Minnesota State Court, central to even this claim is the judgment obtained in the New Jersey Court.

Furthermore, the central issue in this case is whether a judgment entered by the New Jersey Court breached the New Jersey Settlement Agreement; thus, the dispute revolves around the Order Restoring Complaint and Entering Final Judgment issued by the New Jersey Court.  And, the New Jersey Settlement Agreement—the agreement Plaintiffs alleged CIT breached—provides that "the Court in the New Jersey Action [will] retain jurisdiction to enforce the terms of this agreement."  (Kane Aff. Ex. A ¶ 9.)  This reinforces the conclusion that the New Jersey Court has an interest in resolving the instant dispute.  Because this action challenges the Judgment of the New Jersey Court, involves

events that transpired mainly in New Jersey, and requires the application of New Jersey law, it is particularly well-suited for resolution in the District of New Jersey. Accordingly, given the considerations discussed above, the Court determines that the interest of justice factor weighs heavily in favor of transfer of this matter to the New Jersey Court.

### B. The Convenience of the Witnesses

To determine the convenience of the witnesses, the Court must examine the materiality and importance of the anticipated witnesses' testimony and then determine their accessibility and convenience to the forum. Reid-Walen v. Hansen, 933 F.2d 1390, 1396 (8th Cir. 1991). Relevant considerations include the number of essential non-party witnesses, their location, and the preference of courts for live testimony as opposed to depositions. Coast-to-Coast Stores, Inc. v. Womack-Bowers, Inc., 594 F. Supp. 731, 734 (D. Minn. 1984).

The parties do not concentrate their efforts on this factor. The witnesses with relevant testimony in this matter are Plaintiff Murphy (located in Minnesota), one of Plaintiffs' attorneys (located in Minnesota), CIT's director of litigation (located in New Jersey), and two of CIT's attorneys (both located in New Jersey).

While the number and location of witnesses does not counsel strongly in favor of transfer, the Court notes that the witnesses either signed or negotiated the New Jersey Settlement Agreement, thereby expressly contemplating New Jersey venue. See Stewart Org., Inc., 487 U.S. at 29 (noting that the district court "will be called on to address . . . the convenience of a Manhattan forum given the parties' expressed preference for that venue"

in a forum selection clause). Accordingly, this factor does not weigh against transfer to the District of New Jersey.

### C. The Convenience of the Parties

"The logical starting point for analyzing the convenience of the parties is a consideration of their residences in relation to the district chosen by the plaintiff and the proposed transferee district." 17 Moore's Federal Practice § 111.13[1][e] (quotation omitted). Section 1404(a) provides for transfer to a more convenient forum, "not to a forum likely to prove equally convenient or inconvenient." Graff v. Quest Communications Corp., 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999) (citing Van Dusen v. Barrack, 376 U.S. 612, 646 (1964)). Here, Plaintiffs are located in Minnesota while CIT is headquartered in New Jersey. A plaintiff that chooses its home forum is generally presumed to have chosen the forum because it is convenient. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255-56 (1981). While Plaintiffs' choice of forum is not granted great deference in this instance, see supra, this factor weighs against transfer.

### D. Summary

Because the interests of justice factor weighs strongly in favor of transfer and the convenience of the witnesses does not weigh against it, the Court determines that the fact that the convenience of the parties weighs against transfer does not tip the balance. See Coffey, 796 F.2d at 220-21. Accordingly, the Court finds that it is appropriate to transfer this action to the District of New Jersey.

11

**Conclusion**

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED** that CIT's Motion for Transfer of Venue under 28 U.S.C. § 1404(a) (Doc. No. 24) is **GRANTED**.   The Clerk of Court is hereby directed to transfer this matter to the United States District Court for the District of New Jersey.

July 25, 2006                                                                  s/Richard H. Kyle
                                                                                         RICHARD H. KYLE
                                                                                         United States District Judge